UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| KEVIN LONG and LUDVIC PRESTO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 05 Civ. 0639 (GEL) (KNF) |
| MARUBENI AMERICA CORPORATION; | ) | |
| KAZUHIKO SAKAMOTO in his official | ) | |
| and individual capacities; MASAMI SAITO | ) | |
| in his official and individual capacities; JOE | ) | |
| VAN DORN in his official and individual | ) | |
| capacities; and SHIGEMASA SONOBE in | ) | |
| his official and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT
## MARUBENI AMERICA CORPORATION'S MOTION TO DISMISS

PILLSBURY WINTHROP SHAW PITTMAN LLP
Kenneth W. Taber (KT 2570)
Christine N. Kearns (CK 6579)
1540 Broadway
New York, New York 10036
(212) 858-1000

Attorneys for Defendant Marubeni America Corporation

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

SUMMARY OF ARGUMENT .........................................................................................6

I.  Count I of the Complaint Should Be Dismissed Because It Fails To State
    A Claim for Race-Based Discrimination Under § 1981. ....................................8

II. Count II of the Complaint Should Similarly be Dismissed  Because It Fails
    To State a § 1981 Retaliation Claim. ..............................................................12

III. Plaintiffs' State Law and Declaratory Judgment Claims  (Counts III – X)
     Should Be Dismissed for Lack of Pendent Jurisdiction......................................14

IV. Count IX of the Complaint Should Be Dismissed for the Additional
    Reason that Plaintiffs Have Failed to State A Viable Claim for
    Defamation..............................................................................................................17

    A.  Section 74 of the New York Civil Rights Law Bars Any Such
        Claim.............................................................................................................18

    B.  The First and Last Sentences of the January 25  Email Are
        Protected Expressions of Opinion...........................................................20

    C.  The January 25 Email Also Enjoys a Qualified Privilege and
        Plaintiffs Have Not Alleged Facts Sufficient to Overcome That
        Privilege. .....................................................................................................21

    D.  Plaintiffs' Non-Specific Allegations of Defamation Should Also be
        Dismissed.....................................................................................................22

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

**Page**

## CASES

Anderson v. Conboy, 256 F.3d 167 (2d Cir. 1998) ......................................................11

Albert v. Carovano, 851 F.2d 561 (2d Cir. 1988)......................................................13

Araujo v. John Hancock Life Ins. Co., 206 F. Supp. 2d 377 (E.D.N.Y. 2002) ..............................7

Avigliano v. Sumitomo Shoji Am., Inc., 473 F. Supp. 506 (S.D.N.Y. 1979) ........................11, 12

Bascom v. Fried, 116 Fed. Appx. 300, 2004 WL 2580892 (2d Cir. 2004) ...................................16

Baumblatt v. Battalia, 134 A.D.2d 226, 520 N.Y.S.2d 571 (2d Dep't 1987) ...............................22

Berni v. Int'l Gourmet Rests. of Am., Inc., 838 F.2d 642 (2d Cir. 1988) ....................................15

Broome v. Biondi, No. 96 Civ. 805 (RLC),
    1997 WL 83295 (S.D.N.Y. Feb. 10, 1997)..........................................................................23

Buckley v. Litman, 57 N.Y.2d 516, 457 N.Y.S.2d 221 (1982) ............................................21

C.D. of NYC Inc. v. United States Postal Serv., No. 03 Civ. 5055 (JFK),
    2004 WL 2072032 (S.D.N.Y. Sept. 16, 2004).......................................................................6

Caplan v. Winslett, 218 A.D.2d 148, 637 N.Y.S.2d 967 (1st Dep't 1996) ...................................18

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988) ..................................................16

Carone v. Venator Group, Inc., 11 A.D.3d 399, 783 N.Y.S.2d 565 (1st Dep't 2004)...................21

Castellano v. Bd. of Trustees of Police Officers' Variable Supplements Fund,
    937 F.2d 752 (2d Cir. 1991)..............................................................................................16

Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163 (2d Cir. 2000) ...........................................20

Chapel Farm Estates, Inc. v. Moerdler, No. 01 Civ. 3601 (MBM),
    2003 WL 21998964 (S.D.N.Y. Aug. 22, 2003).................................................................15

Chimarev v. TD Waterhouse Investor Servs., Inc., 233 F. Supp.2d 615, (S.D.N.Y. 2002) .........18

Conley v. Gibson, 355 U.S. 41 (1957)........................................................................6

De Jesus v. Sears, Roebuck & Co., 87 F.3d 65 (2d Cir. 1996).......................................................6

Dillon v. City of New York, 261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999)...........................21

First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004)........................16

Flamm v. Am. Ass'n of Univ. Women, 201 F.3d 144 (2d Cir. 2000)...........................................20

Fortino v. Quasar Co., 950 F.2d 389 (7th Cir. 1991).................................................................12

Foster v. Churchill, 87 N.Y.2d 744, 642 N.Y.S.2d 583 (1996).................................................21

Ganthier v. N. Shore Long Island Jewish Health Sys., Inc.,
     298 F. Supp. 2d 342 (E.D.N.Y. 2004) ...........................................................................10

Ghose v. Century 21, Inc., 12 Fed. Appx. 52,
     2001 WL 682369 (2d Cir. June 14, 2001) ................................................................ 10-11

Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.,
     960 F. Supp. 701 (S.D.N.Y. 1997)..................................................................................15

Goldberg v. Coldwell Banker, Inc., 159 A.D.2d 684,
     553 N.Y.S.2d 432 (2d Dep't 1990) ................................................................................21

Hall v. New York Hosp., No. 00 Civ. 7858 (GBD),
     2003 WL 22902125 (S.D.N.Y. Dec. 8, 2003) ......................................................10, 13, 14

Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998) ........................................ 12-13

Hollander v. Cayton, 145 A.D.2d 605, 536 N.Y.S.2d 790 (2d Dep't 1988) ........................... 20-21

Hudson v. Goldman Sachs & Co., 304 A.D.2d 315,
     757 N.Y.S.2d 541 (1st Dep't 2003) ...............................................................................19

Hughes Training, Inc. v. Pegasus Real-Time Inc.,
     255 A.D.2d 729, 680 N.Y.S.2d 721, (3d Dep't 1998)......................................................19

Jetter v. Knothe Corp., 324 F.3d 73 (2d Cir. 2003) ...................................................................16

Jimenez v. United Fed'n Of Teachers,
     239 A.D.2d 265, 657 N.Y.S.2d 672 (1st Dep't 1997).......................................................22

Kelly v. Schmidberger, 806 F.2d 44 (2d Cir. 1986) ...................................................................22

Lanza v. Merrill Lynch & Co., 154 F.3d 56 (2d Cir. 1998) .........................................................16

Liguori v. Alexander, 495 F. Supp. 641 (S.D.N.Y. 1980).............................................................22

Marcus v. AT&T Corp., 138 F.3d 46 (2d Cir. 1998).....................................................................16

McNally v. Yarnall, 764 F. Supp. 853 (S.D.N.Y. 1991) ..........................................................18, 19

McQuillan v. Kenyon & Kenyon, 271 A.D.2d 511, 705 N.Y.S.2d 671 (2d Dep't 2000).............21

Meyer v. Zubak, No. 97 Civ. 1393 (LMM),
   2000 WL 145754 (S.D.N.Y. Feb. 8, 2000)................................................................. 22-23

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085 (2d Cir. 1993)............................10

O'Brien v. Alexander, 898 F. Supp. 162 (S.D.N.Y. 1995).............................................................18

Parks v. Steinbrenner, 131 A.D.2d 60, 520 N.Y.S.2d 374 (1st Dep't 1987)................................20

Payne v. Kathryn Beich & Nestle, 697 F. Supp. 612 (E.D.N.Y. 1988).........................................21

Porto v. Canon, U.S.A., Inc., No. 81 C 1305,
   1981 WL 381 (N.D. Ill. Sept. 9, 1981) .....................................................................................11

Red Cap Valet, Ltd. v. Hotel Nikko (USA), Inc., 273 A.D.2d 289,
   709 N.Y.S.2d 578 (2d Dep't 2000) ............................................................................................22

Robinson v. Gov't of Malaysia, 269 F.3d 133 (2d Cir. 2001)..........................................................7

Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.,
   413 F. Supp. 555 (S.D.N.Y. 1976)............................................................................................18

Sadallah v. City of Utica, 383 F.3d 34 (2d Cir. 2004)...................................................................16

Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604 (1987)...............................................................10

Sandler v. Marconi Circuit Tech. Corp., 814 F. Supp. 263 (E.D.N.Y. 1993) ..............................21

Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129 (2d Cir. 1998) ......................................... 6-7

Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236 (2d Cir. 2002)...........................................6

Steinhilber v. Alphonse, 68 N.Y.2d 283, 508 N.Y.S.2d 901 (1986) .............................................21

Tompka v. Seilor Corp., 66 F.3d 1295 (2d Cir. 1995)...................................................................11

United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966).........................................................16

Wanamaker v. Columbian Rope Co., 713 F. Supp. 533 (S.D.N.Y. 1989) ....................................23

Warner-Jenkinson Co. v Allied Chemical Corp., 567 F.2d 184 (2d Cir. 1977) ...........................15

Watts v. New York City Dep't of Juvenile Justice, No. 99 Civ. 5081,
   2003 WL 22764540 (S.D.N.Y. Nov. 20, 2003).......................................................................10

300172698v18

## STATUTES

28 U.S.C. § 1367 ....................................................................................................14, 15

28 U.S.C. § 2201 ...........................................................................................................15

28 U.S.C. § 2202 ...........................................................................................................15

42 U.S.C. § 1981 ....................................................................................................1, 8, 11

42 U.S.C. § 2000 ......................................................................................................8, 12

Fed. R. Civ. P. 8 .......................................................................................................2, 22

Fed. R. Civ. P. 12(b)(1).........................................................................................6, 7, 15

Fed. R. Civ. P. 12(b)(6).............................................................................................6, 16

New York Civil Rights Law, N.Y. CIV. RIGHTS LAW § 74 ......................................2, 7, 17, 18, 19

New York State Human Rights Law, N.Y. EXEC. LAW § 290...................................5, 14

New York City Human Rights Law, N.Y.C. ADMIN. CODE § 8–101 .........................5, 14

## OTHER

JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE,
  ¶12.34[1][b] at 12-61-63 (3d ed. 1997) ..............................................................6

## PRELIMINARY STATEMENT

Plaintiffs purport to bring this action (i) to enforce severance agreements that they say now entitle them each to over $4.5 million in severance (even though they each earn less than $200,000 per year); and (ii) to recover, in the aggregate, nearly $70 million in alleged damages for discrimination and retaliation by Marubeni America Corporation ("MAC"), Plaintiffs' employer.  Complaint, ¶¶ A–J.[1]

The demonstrable lack of merit to these claims is not currently before the Court.  What is before the Court, however, is the fact that Plaintiffs' own Complaint demonstrates that none of their purported claims is ripe for federal court adjudication.  The Complaint should therefore be dismissed.

In an effort to secure federal jurisdiction prematurely, Plaintiffs attempt to convert clear national origin discrimination claims under Title VII (Counts I and II) into race-based discrimination claims under 42 U.S.C. § 1981.  They do so in order to avoid Title VII's mandatory requirement that they first exhaust their administrative remedies before filing suit for national origin discrimination in federal court.  (It is undisputed that Plaintiffs have not yet exhausted their administrative remedies – indeed, they filed charges with the EEOC only one day before they commenced this action.)

This is not a new tactic.  Indeed, there is well-settled authority establishing the propriety of dismissing § 1981 claims when plaintiffs try to recast national origin claims as § 1981 race claims.  And when, as here, Plaintiffs are non-Japanese employees complaining about unlawful preferential treatment supposedly being received by their Japanese co-workers, those have

---

[1]    A copy of the Amended Complaint in this action, dated February 16, 2005 ("Compl.") is attached as Exhibit A to the accompanying Declaration of Kenneth W. Taber, sworn to April 29, 2005 ("Taber Decl.").

clearly been held national origin claims, not race claims, and dismissed.  <u>See</u> Points I and II, <u>infra</u>.

Upon such a dismissal of Plaintiffs' § 1981 claims, this Court should then decline to exercise pendent jurisdiction over Plaintiffs' remaining state and local law claims (Counts III-X). Those claims should therefore be dismissed as well.  <u>See</u> Point III, <u>infra</u>.

Finally, even if Plaintiffs' defamation claims (Count IX) are not dismissed for lack of jurisdiction, they should still be dismissed, as a matter of law, for failure to state a viable claim. First, Plaintiffs' defamation claims are barred by Section 74 of the New York Civil Rights Law, which precludes any such claim based upon a defendant's out-of-court comments regarding issues in litigation.  Second, Plaintiffs ignore the absolute protection afforded expressions of opinion by the New York State Constitution.  Third, Plaintiffs cannot overcome the qualified privilege that attaches to internal employer-employee communications.  Fourth, a portion of Plaintiffs' claims are so vague that they fail to meet the Fed. R. Civ. P. 8 requirement that defamation claims must be pled with specificity as to (i) the defamatory statements challenged, (ii) to whom those statements were made, (iii) when they were made, and (iv) by whom they were made.  <u>See</u> Point IV, <u>infra</u>.

For all these reasons, the Complaint should be dismissed.

## <u>STATEMENT OF FACTS</u>

MAC, a wholly-owned subsidiary of Marubeni Corporation of Japan, is a New York corporation with a principal place of business in New York City.  Compl., ¶ 16.  The Complaint describes MAC as a general trading company that acts as an intermediary, or broker, in the trade of industrial, agricultural and consumer goods, commodities and natural resources. Compl., ¶ 16.

In February 2001, MAC hired Plaintiff Kevin Long as its Director, Human Resources. Compl., ¶ 25.  MAC thereafter promoted Mr. Long to Vice President of Human Resources and, a year later, again promoted Mr. Long to his current position of Senior Vice President and General Manager of Human Resources.  Compl., ¶¶ 26–27.

Plaintiff Ludvic Presto was hired by MAC in October 1996 as its Manager, Internal Audit, in MAC's Accounting Department.  Compl., ¶ 29.  Like Mr. Long, Mr. Presto has received a series of promotions during his employment at MAC.  Compl., ¶¶ 29–32.  Mr. Presto was promoted to Vice President and General Manger in January 2000 and, two years later, was promoted to his current position of Senior Vice President and General Manager of the Internal Audit Team.  Compl., ¶ 30.

Despite these promotions, and the accompanying raises, Plaintiffs allege in their Complaint that they have "suffered from a concerted and continuous pattern and practice of disparate treatment" due to their "race and/or national origin with respect to the terms and conditions of their employment at MAC."  Compl., ¶¶ 25, 29, 41.  Plaintiffs allege that their compensation was "significantly lower than Asian/Japanese rotational executives," that they were "discriminated against" by not receiving appropriate "power and responsibility" as compared with their less qualified or experienced Asian/Japanese "counterparts," that they were less respected than their Asian/Japanese counterparts, that they were excluded from meetings and communications that occurred in Japanese, and that they received fewer "employee benefits and perquisites."  Compl., ¶¶ 42–44.

Closely examined, however, it is clear that the comparator group whom Plaintiffs allege received preferential treatment were not "Asians" generally, but rather Plaintiffs' Japanese co-workers.  The Complaint in fact fails to allege even a single instance where a *non-Japanese*

Asian employee received preferential treatment compared with Plaintiffs.  The preferential treatment alleged in the Complaint instead relates to the Japanese nationals, assigned to MAC by MAC's Japanese parent, as "rotating" managerial staff.  Compl., ¶¶ 42–44, 88, 94.  Indeed, Plaintiffs nowhere allege that they were treated any less favorably than any other locally-based employees.

It is also noteworthy that the allegations that Plaintiffs were damaged by discrimination favoring their Japanese co-workers are completely inconsistent with a separate series of allegations Plaintiffs make about MAC voluntarily providing Plaintiffs extraordinary job security and severance protection.  Plaintiffs allege, for example, that MAC promised them "secure life-time employment agreement[s]," and that MAC agreed to pay them each more than $4.5 million in severance if their employment at MAC were "terminated for any reason."  Compl., ¶¶ 33–38.

Hoping to manufacture a constructive discharge basis for cashing in on these extraordinary "promises," Plaintiffs allege that, after entering these agreements, MAC had a change of heart, and commenced a "campaign of discriminatory and retaliatory conduct" in order to intimidate Plaintiffs into "abandoning their efforts to change MAC" for the better.  Compl., ¶ 121.  Plaintiffs include among these supposed retaliatory acts:  threats by MAC to report Plaintiffs to the authorities on "trumped up charges" of trying to "defraud millions of dollars from MAC" through their severance agreements, Compl., ¶ 127; and placing Plaintiffs on administrative leave while MAC investigates whether those severance agreements are forgeries.[2] Compl., ¶ 129.

---

[2]   It is undisputed that the originals of Plaintiffs' supposed severance agreements were just last week delivered by Plaintiffs' counsel to a mutually agreed-upon document custodian.  They can, therefore, now finally be subjected to confidential, supervised expert examination at MAC's direction.

On January 18, 2005, Plaintiffs filed charges of discrimination under Title VII with the Equal Employment Opportunity Commission ("EEOC").  Compl., ¶ 21.  Without waiting for the EEOC to process the charge, let alone issue right-to-sue letters, Plaintiffs filed this action the next day.  The amended complaint, which added a defamation claim (Count IX), was filed February 16, 2005.

Count I of the Complaint alleges race-based discrimination in violation of § 1981.  Count II alleges retaliation under § 1981.  Counts III–VIII allege violations of the New York State Human Rights Law, N.Y. EXEC. LAW §§ 290, et seq., and the New York City Human Rights Law, N.Y.C. ADMIN. CODE §§ 8–101, et seq., together with retaliation and aiding and abetting claims under each of those laws.  Count IX alleges defamation arising out of (i) a January 25, 2005, internal MAC email to MAC employees, and (ii) additional, unspecified defamatory statements about Plaintiffs.

The January 25 email describes MAC's view of Plaintiffs' allegations in this suit:

> We believe that the two individuals have advanced their allegations as part of an effort to collect an unbelievably large amount of money of more than $4.5 million each, by way of severance agreements to which they are absolutely not entitled. They claim to rely on documents allegedly signed by executives of the company who have totally denied ever signing or even seeing the documents in question.  The two individuals have refused to make the original of these available for examination by a handwriting expert; and a preliminary investigation conducted by the Company has uncovered substantial evidence that the alleged severance letters are not genuine.  When the Company made it clear that it would not pay the outrageous amounts of money demanded, the two individuals filed the litigation, claiming that they had been acting only for the purpose of improving the company.

Compl., ¶ 132.

Finally, Count X seeks a declaratory judgment that "Defendants' conduct constitutes a constructive discharge and/or 'good cause' for [Plaintiffs] to terminate their employment at

MAC, thereby entitling them to the severance payments and other benefits set forth in the Severance Agreements."  Compl. ¶ 203.

## SUMMARY OF ARGUMENT

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court must assume the Complaint's well-pleaded factual allegations are true.  See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).  In reviewing the Complaint, however, the Court need not credit "conclusory allegations" that are "unsupported by factual assertions."  De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996); accord JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶12.34[1][b] at 12-61-63 (3d ed. 1997).  Indeed, the Complaint is properly dismissed if Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief.  See Conley v. Gibson, 355 U.S. 41, 45–46 (1957).

Here, Plaintiffs' § 1981 claim should be dismissed under Rule 12(b)(6) because it is not a race-based claim at all, but instead a national origin claim for which Plaintiffs have failed to exhaust their administrative remedies.  As set forth below, cases decided in the Second Circuit clearly reject such attempts to plead national origin discrimination claims as § 1981 claims of race discrimination.  See Point I, infra.

Plaintiffs' § 1981 retaliation claim similarly fails, not only because it too is really a national origin-based claim, but also because Plaintiffs fail to allege that they ever actually complained about race-based conduct prohibited by § 1981.  See Point II, infra.

Upon the dismissal of Plaintiffs' § 1981 claims – the only federal claims over which this Court may exercise independent jurisdiction – Plaintiffs' state and city law claims should be dismissed under Rule 12(b)(1).[3]  No unusual circumstances warrant the continued exercise of

---

[3]   Fed. R. Civ. P. 12(b)(1) provides for the dismissal of a complaint when the federal court lacks subject matter jurisdiction.  C.D. of NYC Inc. v. United States Postal Serv., No. 03 Civ.

supplemental jurisdiction over Plaintiffs' state and city law claims once the federal law claims are dismissed. Because this Court's jurisdiction over Plaintiffs' claim for a declaratory judgment similarly rests on the presence of a separate federal claim, that declaratory judgment claim should likewise be dismissed. See Point III, infra.

Even if Plaintiffs' state law defamation claims are not dismissed for lack of jurisdiction, they should still be dismissed for failure to state a claim. The only allegedly defamatory statement to which Plaintiffs refer with any specificity is the January 25 internal email that MAC distributed to its own employees, five days after Plaintiffs orchestrated a media blitz to publicize their allegations. See Taber Decl. ¶¶ 3, 4 and Ex. B. This email is protected by § 74 of the New York Civil Rights Law, as an out-of-court communication about pending litigation that bears directly on the issues in litigation. The first and last sentences of the email are also protected expressions of MAC's opinion, and the email as a whole enjoys a qualified privilege given MAC's common interest with the employees who received it. That qualified privilege could only be overcome by detailed factual allegations of actual malice, but no such allegations are made here. Finally, Plaintiffs' other, non-specific defamation allegations should be dismissed for failure to allege the statements at issue, or to allege to whom those statements were made, when they were made, and by whom they were made. See Point IV, infra.

---

5055 (JFK), 2004 WL 2072032, at *1 (S.D.N.Y. Sept. 16, 2004). While the court must accept as true all material factual allegations in the complaint, it will not draw inferences favorable to the party asserting jurisdiction. When the jurisdictional facts have been called into question, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998); see also Araujo v. John Hancock Life Ins. Co., 206 F. Supp. 2d 377, 380 (E.D.N.Y. 2002). In considering a motion to dismiss under Rule 12(b)(1), the court may also consider affidavits and other material beyond the pleadings to resolve the jurisdictional question. Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n. 6 (2d Cir. 2001); Araujo, 206 F. Supp. 2d at 380.

## ARGUMENT

I.    **Count I of the Complaint Should Be Dismissed Because It Fails
      To State A Claim for Race-Based Discrimination Under § 1981.**

Section 1981 of the Civil Rights Act of 1866 prohibits race-based discrimination.[4]  It

plainly does not reach national origin discrimination.  The federal prohibition on national origin

discrimination is instead found in Title VII – a statute which also unambiguously requires the

exhaustion of administrative remedies before a suit like this can be brought.  See 42 U.S.C.

§ 2000e-5(f)(1).

Impermissibly attempting to avoid that administrative exhaustion requirement, Plaintiffs

urge this Court to pretend their national origin claim is really a § 1981 race discrimination claim.

It is readily apparent, however, that what Plaintiffs in fact allege is national origin discrimination

– i.e., that their Japanese co-workers received preferential treatment from MAC, as compared

with Plaintiffs and other non-Japanese employees.  For example, the Complaint alleges that:

- Plaintiffs' "compensation, including salary and bonus, is, and has been, significantly lower than Asian/Japanese rotational executives at MAC who have less experience and are less qualified than Plaintiffs."  Compl., ¶ 42.  *In fact, every one of those "rotational executives" is Japanese.*

- Plaintiffs "each have an Asian/Japanese 'counterpart' to their positions at MAC who technically are Plaintiffs' subordinates . . . .  Despite Plaintiffs' more senior titles and superior qualifications and performance, each of their counterparts retain greater power and responsibilities, and are more respected by the senior Asian/Japanese executives."  Compl., ¶ 43.  *In fact, every one of those "counterparts" is Japanese.*

---

[4]    42 U.S.C. § 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

- Plaintiffs "are excluded from important weekly department meetings that are conducted *in Japanese*, and are only included in monthly meetings at which less important issues are discussed.  Moreover, all written communications of any importance are written only *in Japanese*."  Compl., ¶ 43 (emphasis added).

- "[T]he ACRC [consultant's] report dated December 22, 2003 stated that a law firm in the US could review this inability of local staff to move up to mid-level and upper management positions as discrimination *against Nationals* and could become costly to MAC . . ."  Compl., ¶ 50 (emphasis added).

- "Similarly, in another directive to Human Resources dated April 7, 2004, Mr. Takikawa required a candidate for a position in the Industrial Material Department to be fluent in *Japanese* and English . . ."  Compl., ¶ 55 (emphasis added).

- "Most recently, in an email dated December 23, 2004, Brian Yamato, an Asian/Japanese Senior Manager of Administration, stated that he was sure that MAC could find a *young Japanese woman* to replace an Asian/Japanese female employee who was leaving MAC."  Compl., ¶ 60 (emphasis added).

- "Defendants . . . have discriminated against Plaintiffs . . . in violation of Section 1981 by denying them the same terms and conditions of employment available to employees who are Asian/Japanese, including but not limited to, denying them compensation (including salary and bonus), benefits and other perquisites equal to that of employees who are Asian/Japanese."  Compl., ¶ 144.

While Plaintiffs sometimes resort to the artifice of referring to their co-workers as "Asian/Japanese" – rather than just "Japanese" – that pleading device is of no consequence. Indeed, Plaintiffs' lengthy Complaint does not contain a single allegation that there are any *non-Japanese* Asian employees receiving preferential treatment at MAC.  Plaintiffs' Complaint instead rests entirely on the contrast Plaintiffs draw between themselves and their Japanese "counterparts."  The fact that those Japanese comparators are also obviously all Asian is, of course, hardly a revelation.  It certainly does not convert these national origin discrimination claims into race-based § 1981 claims.[5]

---

[5]   As for the Complaint's allegations of racially-motivated conduct adverse to African Americans and Hispanics (see, e.g., Compl., ¶¶ 4, 49, 59, 62–63, 72, 77–79), such alleged conduct, even if proven, would not give rise to any race-based discrimination claims available to these two Caucasian plaintiffs.

9

This Court, like many before it, should thus reject Plaintiffs' attempt to recast their national origin claims as race-based § 1981 claims.  See, e.g., Hall v. New York Hosp., No. 00 Civ. 7858 (GBD), 2003 WL 22902125, at *4 (S.D.N.Y. Dec. 8, 2003) (granting motion to dismiss because, "essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory *and racially motivated*"; emphasis added); Ganthier v. N. Shore Long Island Jewish Health Sys. Inc., 298 F. Supp. 2d 342, 348 (E.D.N.Y. 2004) (dismissing § 1981 claim because there was no allegation that "plaintiff's race was even a factor in the change of her job duties").

As this Court has previously made clear, "a plaintiff asserting racial discrimination under § 1981 must do more than assert conclusory allegations."  Watts v. New York City Dep't of Juvenile Justice, No. 99 Civ. 5081 (GBD), 2003 WL 22764540, at *3 (S.D.N.Y. Nov. 20, 2003) (granting motion to dismiss § 1981 claims).  A proper § 1981 claim requires a demonstration of "an intent to discriminate *on the basis of race* by the defendant; and . . . the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)."  Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (emphasis added).  As the Second Circuit has emphasized, "an essential element to [a § 1981] cause of action is a requirement that the alleged discrimination took place because of the individual's race."  Id.

Both the United States Supreme Court and the Second Circuit have also left no doubt that § 1981 does not reach national origin discrimination.  Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613  (1987) (holding that "racial discrimination [is what] Congress intended § 1981 to forbid"); Ghose v. Century 21, Inc., 12 Fed. Appx. 52, 55, 2001 WL 682369, at *2 (2d Cir.

June 14, 2001) ("[w]e agree with the district court that 42 U.S.C. § 1981 does not prohibit discrimination on the basis of national origin").[6]

The case of <u>Avigliano v. Sumitomo Shoji Am., Inc.</u>, 473 F. Supp. 506 (S.D.N.Y. 1979),[7] is particularly instructive in this regard.  In <u>Avigliano</u>, a group of female secretaries sued their employer, the U.S. subsidiary of a major Japanese trading company, claiming a race-based violation of § 1981.  Plaintiffs claimed "they ha[d] been restricted to clerical jobs and not trained for or promoted to executive, managerial or sales positions for which Sumitomo favors male citizens of Japan."  <u>Id.</u> at 508.  The court immediately saw through their § 1981 claim and dismissed it.  The court explained that it "could not equate plaintiffs' claims that they have been discriminated against because they are Not [sic] Japanese nationals with discrimination based on their race."  <u>Id.</u> at 514.  The court found "no need for [plaintiffs] to strain to fit their grievances into the mold of racial discrimination."  <u>Id.</u>

In <u>Porto v. Canon, U.S.A. Inc.</u>, No. 81 C 1305, 1981 WL 381, at *8 (N.D. Ill. Sept. 9, 1981), the court similarly held:

> Although plaintiff in a few paragraphs of [his] complaint alleges that he is being discriminated against because of his race, the facts alleged do not support this conclusion.  The plaintiff is not complaining that he is discriminated against because he is white.  Rather, the complaint clearly alleges that plaintiff is being discriminated against because he is not of Japanese origin.  There is nothing in the complaint to indicate that plaintiff is treated any differently than blacks, Hispanics, American Indians or Orientals.  The only facts alleged indicate that defendant is giving preference to persons of Japanese national origin over all other persons.

---

[6]   <u>See also</u> <u>Anderson v. Conboy</u>, 256 F.3d 167, 170 (2d Cir. 1998) ("[i]t is also settled that Section 1981 does not prohibit discrimination on the basis of gender or religion, national origin, or age"); <u>Tompka v. Seilor Corp.</u>, 66 F.3d 1295, 1316 (2d Cir. 1995) ("[w]hereas § 1981 only prohibits race discrimination, Title VII covers discrimination based on sex, color, national origin and religion").

[7]   <u>Vacated and remanded on other grounds</u>, 638 F.2d 552 (2d Cir. 1981), <u>rev'd and remanded on other grounds</u>, 457 U.S. 176 (1982).

> Consequently, the complaint focuses on national origin as the basis
> for the discrimination and does not state a claim for discrimination
> on the basis of race.  Consequently, plaintiff's § 1981 claim must
> be dismissed.

Also significant here is the fact that Plaintiffs concede they are simultaneously pursuing

Title VII claims on these very same facts.  Indeed, the Complaint acknowledges that:

> [O]n or about January 18, 2005, Plaintiffs filed individual charges
> of discrimination with the Equal Employment Opportunity
> Commission ("EEOC"), alleging violations of Title VII of the
> Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq. ("Title VII").
> *The charges arise out of the same facts alleged herein.*[8]

Compl., ¶ 21 (emphasis added).  Plaintiffs further declare that, "when the EEOC completes its

investigation of the charges . . . Plaintiffs will be seeking leave to amend this Complaint to add

claims that MAC violated Title VII."  Compl., ¶ 22.

In light of the foregoing, Plaintiffs will not be prejudiced by dismissal now of their

§ 1981 race-based claims, with any nationality-based claims to be litigated in federal court only

after they have first exhausted their administrative remedies.

## II.     Count II of the Complaint Should Similarly be Dismissed Because It Fails To State a § 1981 Retaliation Claim.

The Complaint fails to state a legally sufficient claim for retaliation under § 1981.  As the

Second Circuit has emphasized:

> [T]o be actionable under § 1981, the retaliation must have been in
> response to the claimant's assertion of rights that were protected by
> § 1981 . . . An act of retaliation for engaging in activity protected
> by Title VII does not give rise to a claim for retaliation that is
> cognizable under § 1981 unless that activity was also protected by
> § 1981.

---

[8]     Title VII is the proper statutory basis for Plaintiffs' purported federal law claims.  <u>See</u>
<u>Fortino v. Quasar Co.</u>, 950 F.2d 389 (7th Cir. 1991) ("[Title VII] protects Americans of non-
Japanese origin from discrimination in favor of persons of Japanese origin."); <u>Avigliano</u>,
<u>supra</u>, 473 F. Supp. at 514 (dismissing § 1981 claim where "plaintiffs have, and are
exercising, an adequate remedy for redress under Title VII").

12

Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998) (finding plaintiff's claims not actionable under § 1981, and therefore dismissing plaintiff's § 1981 retaliation claim); see also Albert v. Carovano, 851 F.2d 561, 572 (2d Cir. 1988) ("Section 1981 rights being vindicated by white plaintiffs must be identified with some particularity in order to limit actions under that statute to its purpose.  Otherwise, non-minority plaintiffs could bring actions where Section 1981 rights are not implicated."); Hall, 2003 WL 22902125, at *4 ("plaintiff's amended complaint can only survive a motion to dismiss if it alleges facts sufficient to show that he was terminated from his position in retaliation for his role in vindicating the Section 1981 rights of a member or members of a racial minority group").

Here, Plaintiffs fail to sufficiently allege that they participated in activity protected by § 1981.  In fact, Count II of the Complaint (Compl., ¶¶ 148–152) contains *no* allegation that Plaintiffs ever complained about race-based conduct prohibited by § 1981.  A review of the full Complaint likewise reveals no allegation of the required protected activity.

Instead, all Plaintiffs allege – and only in the most general manner – is that they complained about "numerous employment and immigration law violations" (¶ 5), about "illegal discrimination and corporate wrongdoing" (¶ 82), about "unlawful discrimination and other illegal conduct" (¶ 109), about "discrimination and other misconduct" (¶ 112), about "discrimination and other illegal activity" (¶ 114), and about "discrimination, fraud and other unlawful conduct" (¶ 115).  Not one of those allegations concerning potentially protected conduct mentions race.  Nor is there any reason to infer that any of these generalized discrimination allegations relate to race, given that the Complaint recites allegations of discrimination based on national origin, age, gender, and religion.

Finally, the sole allegation in the Complaint that Plaintiffs could even conceivably point to as an allegation that they complained about race discrimination falls far short of satisfying their pleading burden.  Plaintiffs allege that, "in the July 12 letter, Messrs. Long and Presto recommended, among other things, that MAC implement 15 initiatives to correct unlawful conduct and other wrongdoing, including but not limited to . . . . (2) the establishment of a task force to . . . recruit qualified non-Asian minority and female applicants."  Compl., ¶ 108.  But even assuming that occurred, a recommendation by MAC's highest ranking Human Resources professional to simply establish a task force can hardly be held to constitute conduct protected by § 1981.  In fact, if that were all it took to establish protected conduct, *any* action by a Human Resources employee in the course of carrying out his or her job responsibilities would be "protected."  That is not the law.[9]

### III.   Plaintiffs' State Law and Declaratory Judgment Claims (Counts III – X) Should Be Dismissed for Lack of Pendent Jurisdiction.

Plaintiffs sue MAC and Messrs. Sakamoto, Saito and Van Dorn under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") (Counts III–VIII).  Plaintiffs also include Mr. Sonobe as a defendant to certain (but not all) of these state and local law claims.  In Count IX, Plaintiffs allege defamation by MAC and by Messrs. Sakamoto, Saito and Sonobe.

The sole federal jurisdictional basis asserted for this collection of state and local law claims is "supplemental jurisdiction . . . pursuant to 28 U.S.C. § 1367(a)."  Compl., ¶ 11.  For the reasons set forth above, however, Plaintiffs' § 1981 claims – the only federal claims asserted

---

[9]   Nor is there any allegation in the Complaint that causally links this task force recommendation to any retaliatory acts that allegedly followed.  See Hall, 2003 WL 22902125, at *5 (dismissing amended complaint where "[p]laintiff's allegations are entirely conclusory and are unsupported by facts sufficient to lead to a conclusion that the hospital treated him or these patients unfairly because they were black").

here – should be dismissed.[10]  Upon that dismissal, no federal claims will still be pending.

Plaintiffs' pendent state and local law claims should then be dismissed as well, pursuant to Fed.

R. Civ. P. 12(b)(1).

A federal court may exercise supplemental jurisdiction over pendent state law claims

only if they satisfy the requirements of 28 U.S.C. § 1367.[11]  A federal court should decline to

exercise such jurisdiction, however, if the case falls within one of the four enumerated

exceptions of § 1367(c).  Here, the particular exception applicable, § 1367(c)(3), precludes the

exercise of supplemental jurisdiction when "the district court has dismissed all claims over

which it has original jurisdiction."

Given that clear language, if Plaintiffs' § 1981 claims are dismissed, this Court should

decline to exercise supplemental jurisdiction over Plaintiffs' state and local law claims.  Indeed,

district courts within the Second Circuit have either routinely followed that practice, or have

been instructed to do so on remand.  As the Second Circuit has explained:

---

[10]   Though Plaintiffs cite 28 U.S.C. §§ 2201 and 2202 as a further basis of federal jurisdiction for their declaratory judgment claim in Count X, neither section provides federal question jurisdiction.  They instead only provide authority for additional remedies in actions that already involve a federal dispute.  Berni v. Int'l Gourmet Rests. of Am., Inc., 838 F.2d 642, 648 (2d Cir. 1988) (citing Warner-Jenkinson Co. v Allied Chem. Corp., 567 F.2d 184, 186 (2d Cir. 1977)); see also Chapel Farm Estates, Inc. v. Moerdler, No. 01 Civ. 3601 (MBM), 2003 WL 21998964, at *8 (S.D.N.Y. Aug. 22, 2003) (dismissing declaratory judgment claim where federal claims were dismissed, noting that "the Declaratory Judgment Act does not expand the jurisdiction of the federal courts"); Global Discount Travel Servs., LLC v. Trans World Airlines, Inc., 960 F. Supp. 701, 710 (S.D.N.Y. 1997) (dismissing plaintiff's claims with the result that "there is no independent basis for federal jurisdiction in this case, and the declaratory judgment action must be dismissed as well").

[11]   28 U.S.C. § 1367 (a) provides:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

> [I]n the usual case in which all federal-law claims are eliminated
> before trial, the balance of factors to be considered under the
> pendent jurisdiction doctrine – judicial economy, convenience,
> fairness and comity – will point toward declining jurisdiction over
> the remaining state-law claims. [12]

Lanza v. Merrill Lynch & Co., 154 F.3d 56, 61 (2d Cir. 1998) (citing Carnegie-Mellon Univ. v.

Cohill, 484 U.S. 343, 350 n.7 (1988)).

Nor can Plaintiffs here lay claim to having already invested considerable resources

preparing to litigate their state claims in federal court.  Bascom v. Fried, 116 Fed. Appx. 300,

302, 2004 WL 2580892, at *2 (2d Cir. 2004), is instructive in this regard.  In Bascom, the

Second Circuit affirmed the district court's refusal "to exercise supplemental jurisdiction

over [plaintiff's] state breach of contract claim at the outset of the litigation, after dismissing all

of [plaintiff's] federal claims pursuant to Fed. R. Civ. P. 12(b)(6)."  The Court explained that, at

such an early stage, "it cannot reasonably be concluded that [plaintiff] had expended substantial

time, effort, or money in preparing the state claim, such that the district court's rejection of

supplemental jurisdiction was unfair."  Id.[13]

---

[12]   See Sadallah v. City of Utica, 383 F.3d 34, 40 (2d Cir. 2004) (instructing district court to
dismiss state defamation claim where "plaintiffs no longer have any viable federal claim,
[and] any remaining state law claims belong in state, rather than federal, court") (citations
omitted);  Jetter v. Knothe Corp., 324 F.3d 73, 77 (2d Cir. 2003) (finding that district court
properly declined to adjudicate state law claims when granting summary judgment on federal
age discrimination claim because, "'in general, where the federal claims are dismissed before
trial, the state claims should be dismissed as well'") (quoting Marcus v. AT&T Corp., 138
F.3d 46, 57 (2d Cir. 1998));  Castellano v. Bd. of Trustees of Police Officers' Variable
Supplements Fund, 937 F.2d 752, 758 (2d Cir. 1991) ("Since the district court dismissed the
federal claims, and we have affirmed, there remains no independent basis for federal
jurisdiction: 'Certainly, if the federal claims are dismissed before trial, even though not
insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'")
(quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)).

[13]   See also First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004)
(finding district court properly declined to exercise supplemental jurisdiction where RICO
claims were dismissed "before significant discovery had taken place . . . [where] many of the
litigants are foreign nationals, and [where] case is likely to go on for years").

Accordingly, because Plaintiffs' § 1981 claims should be dismissed, the state and local law claims should follow.

**IV.     Count IX of the Complaint Should Be Dismissed for the Additional Reason that Plaintiffs Have Failed to State A Viable Claim for Defamation.**

Plaintiffs contend that Defendants MAC, Sakamoto, Saito and Sonobe defamed them on "January 25, 2005 when Mr. Sonobe sent an email communication to all employees of MAC," entitled "The lawsuit initiated by Kevin Long and Ludvic Presto against the Company." Compl., ¶ 133.  According to the Complaint, that email stated:

> We believe that the two individuals have advanced their allegations as part of an effort to collect an unbelievably large amount of money of more than $4.5 million each, by way of severance agreements to which they are absolutely not entitled. They claim to rely on documents allegedly signed by executives of the company who have totally denied ever signing or even seeing the documents in question.  The two individuals have refused to make the original of these available for examination by a handwriting expert; and a preliminary investigation conducted by the Company has uncovered substantial evidence that the alleged severance letters are not genuine.  When the Company made it clear that it would not pay the outrageous amounts of money demanded, the two individuals filed the litigation, claiming that they had been acting only for the purpose of improving the company.

Compl. ¶ 132.

By its very language, however, this statement regarding MAC's view of the litigation cannot be the subject of a defamation claim in New York.  Section 74 of the New York Civil Rights Law provides absolute protection for such "out-of-court communications" regarding "issues in litigation."  In addition, the first and last sentences of the email constitute protected expressions of opinion, not actionable statements of fact.  Moreover, the entire email is an internal workplace communication from an employer to its employees, and therefore subject to a

qualified privilege.  That qualified privilege can be overcome only by specific allegations – not present here – establishing actual malice.

A.     **Section 74 of the New York Civil Rights Law Bars Any Such Claim**

Under § 74 of the New York Civil Rights Law, "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding."  N.Y. CIV. RIGHTS LAW § 74.  To trigger this absolute statutory protection, "[a]ll that is needed . . . is that the alleged defamatory material may possibly bear on the issues in litigation now or at some future time."  Savage Is Loose Co. v. United Artists Theatre Circuit, Inc., 413 F. Supp. 555, 561 (S.D.N.Y. 1976).  "As long as the subject of an out-of-court communication relates to pending or contemplated litigation, and is made in connection with a judicial proceeding, it furthers an interest of social importance and should be protected."  Caplan v. Winslett, 218 A.D.2d 148, 153, 637 N.Y.S.2d 967, 970 (1st Dep't 1996).

It is indisputable that the January 25 email relates to "pending litigation" and bears directly "on the issues in litigation."  In fact, it's a classic example of the kind of "out-of-court communication" about pending litigation that § 74 affords absolute protection.[14]

The holding in McNally v. Yarnall, 764 F. Supp. 853, 856 (S.D.N.Y. 1991), confirms the absolute protection afforded such out-of-court statements.  In McNally, plaintiffs sought leave to

---

[14]   As the court pointed out in Chimarev v. TD Waterhouse Investor Servs., Inc., 233 F. Supp.2d 615, 618 (S.D.N.Y. 2002):

It is well-settled that statements made by parties and their attorneys in the context of legal proceedings are absolutely privileged if they are pertinent to the litigation. The concept of pertinent material is 'extremely broad' and 'embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability.

See also O'Brien v. Alexander, 898 F. Supp. 162, 171–72 (S.D.N.Y. 1995) ("the essence of the absolute privilege defense is that 'it confers immunity from liability regardless of motive'").

amend their complaint to add a defamation claim against defendant's counsel.  The defamation claim was premised on counsel's statement to a reporter articulating the defendant's litigation position that products sold by plaintiffs might not be authentic.  Id. at 855.  The court denied plaintiffs leave to amend, noting that denial of such leave was warranted where the proposed amendment could not survive a motion to dismiss.  The court held that the attorney's out-of-court statements to a reporter regarding the litigation were absolutely protected by § 74.  Because the allegedly defamatory remarks "restat[ed] his client's position in defending the action," a defamation claim could not be asserted.  Id. at 856.[15]

Here, MAC articulated its position regarding Plaintiffs' allegations in the January 25 email, after Plaintiffs deliberately publicized those allegations, but before responding formally to the Complaint.  That accelerated timing makes no difference however.  "Nothing about Civil Rights Law § 74 suggests that a person served with a summons and complaint should not feel free and safe to announce its position, and otherwise make its first response to the allegations against it, in a forum other than the court."  Hudson v. Goldman Sachs & Co., 304 A.D.2d 315, 316, 757 N.Y.S.2d 541, 542 (1st Dep't 2003) (affirming dismissal of defamation claim against plaintiff's former employer who had made comments in a news article "impugning plaintiff's honesty").

Accordingly, § 74 provides an absolute bar to Plaintiffs' defamation claims relating to the January 25 email.

---

[15]   The cases apply the same rule when it is an employer, rather than counsel, who makes the allegedly defamatory remarks at issue.  See, e.g., Hughes Training, Inc. v. Pegasus Real-Time Inc., 255 A.D.2d 729, 730, 680 N.Y.S.2d 721, 723 (3d Dep't 1998) (dismissing defamation counterclaim brought by former employees after plaintiff posted a memorandum outlining its litigation position on an office bulletin board).

**B.   The First and Last Sentences of the January 25
Email Are Protected Expressions of Opinion.**

New York courts have made it clear that, "in all defamation cases, the threshold issue

which must be determined, as a matter of law, is whether the complained of statements constitute

fact or opinion."  Parks v. Steinbrenner, 131 A.D. 2d 60, 62, 520 N.Y.S.2d 374, 375 (1st Dep't

1987) (dismissing defamation claim because statements of baseball club owner regarding umpire

were opinion).  Statements that constitute opinion are subject to "absolute protection" under the

New York State Constitution.  Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163, 178 (2d Cir.

2000) (citing Flamm v. Am. Ass'n. of Univ. Women, 201 F.3d 144, 147-48 (2d Cir. 2000)).

Whether a statement is protected opinion is a matter of law to be determined by the court.  Id.

Here, the first and last sentences of the January 25 email contain statements that can

fairly be read only as expressions of opinion:  "We believe"; Plaintiffs attempted to collect "an

unbelievably large amount of money"; MAC would not pay "the outrageous amounts of

money . . .  to which they are absolutely not entitled."  Compl., ¶ 132.  The very nature of this

language leaves no doubt that it expresses MAC's opinion.  See, e.g., Parks, 131 A.D. 2d at 62,

520 N.Y.S.2d at 375.

Moreover, what the entirety of the email purports to do, and does, is give MAC

employees their employer's view of the already highly-publicized claims asserted by Plaintiffs.[16]

Such workplace expressions of an employer's viewpoint are well recognized to constitute

protected opinions, not actionable statements of fact.[17]

---

[16]   See Taber Decl. ¶¶ 3–4:  "following the January 20, 2005 press release [by Plaintiffs], news
articles concerning the instant action were published in *The Wall Street Journal*, *The New
York Times*, and various Japanese media."

[17]   See, e.g., Hollander v. Cayton, 145 A.D. 2d 605, 605-606, 536 N.Y.S.2d 790, 792 (2d Dep't
1988) (statements made by president of a hospital's professional staff, to that staff, labeling
defendant physician "immoral," "unethical," and someone who had "mismanaged cases,"

**C.    The January 25 Email Also Enjoys a Qualified Privilege and
Plaintiffs Have Not Alleged Facts Sufficient to Overcome That Privilege.**

In New York, "[t]here exists a qualified privilege where the communication is made to

persons who have some common interest in the subject matter." Foster v. Churchill, 87 N.Y.2d

744, 751, 642 N.Y.S.2d 583, 587 (1996).  This qualified privilege clearly encompasses

memoranda "prepared for internal use" in which "statements are made about an employee in an

employment context."  Dillon v. City of New York, 261 A.D. 2d 34, 40, 704 N.Y.S.2d 1, 7 (1st

Dep't 1999) (citations omitted).  Such memoranda are "qualifiedly privileged as having been

made by one person to another upon a subject in which they have a common interest."  Id.[18]

Once such a qualified privilege is established, "the shield of privilege is pierced only by a

plaintiff's showing of actual malice."  Dillon, 261 A.D. 2d at 40, 704 N.Y.S.2d at 7.  Moreover,

such "allegations of ill will and spite" cannot "rest solely on surmise and conjecture."  Id.

---

would be "accepted by the audience as opinion rather than statements of fact"); see also
Steinhilber v. Alphonse, 68 N.Y.2d 283, 293, 508 N.Y.S.2d 901, 906 (1986) (affirming
dismissal of defamation claim where union official's statement that "plaintiff [union
member] lacked 'talent, ambition, and initiative'" expressed an opinion); Sandler v. Marconi
Circuit Tech. Corp., 814 F. Supp. 263, 268 (E.D.N.Y. 1993) (employer's statement that
employee "'screwed up' and therefore had to be 'let . . . go'" constitutes "nothing more than
an expression of opinion");  Goldberg v. Coldwell Banker, Inc., 159 A.D. 684, 685, 553
N.Y.S.2d 432, 433-34 (2d Dep't 1990) (statements from bank employee to superior that
plaintiff "has been most uncooperative, abrasive and dilatory in fulfilling his responsibilities"
would be understood by superior "as opinion rather than statements of fact").

[18]  Payne v. Kathryn Beich & Nestle, 697 F. Supp. 612 (E.D.N.Y. 1988) (regional sales
manager's statements to national sales manager, personnel director and sales manager were
subject to qualified privilege because parties shared "clear interest"); Buckley v. Litman, 57
N.Y. 2d 516, 520-521, 457 N.Y.S.2d 221, 222-23 (1982) (finding common interest qualified
privilege between former employer and prospective employer as to whether plaintiff had
stolen medical files); Carone v. Venator Group, Inc., 11 A.D.3d 399, 400, 783 N.Y.S.2d 565,
566 (1st Dep't 2004) ("common interest privilege . . . protects good faith communications
between employees and management regarding the employer's business"); McQuillan v.
Kenyon & Kenyon, 271 A.D. 2d 511, 512, 705 N.Y.S.2d 671, 673 (2d Dep't 2000) (finding
statements made by law firm partner to other partners protected by qualified privilege).

Here, all that Plaintiffs put forward in support of their attempt to overcome MAC's qualified privilege are conclusory allegations that the January 25 email was sent "maliciously" with "knowledge of their falsity and/or with reckless disregard for the truth or falsity of such statements." Such conclusory allegations, unaccompanied by a single factual recital (see Compl., ¶¶ 132, 186), are plainly insufficient to overcome MAC's qualified privilege. See Red Cap Valet, Ltd. v. Hotel Nikko (USA), Inc., 273 A.D.2d 289, 290, 709 N.Y.S.2d 578, 579 (2d Dep't 2000) ("conclusory allegations of malice were insufficient to overcome the privilege").[19]

Because Plaintiffs have thus failed to allege facts sufficient to overcome MAC's qualified privilege, Count IX should be dismissed.

### D.   Plaintiffs' Non-Specific Allegations of Defamation Should Also be Dismissed.

As a fallback, the Complaint contains a catchall allegation that, "upon information and belief, Defendants . . . have made, and continue to make, these and other similarly false and defamatory statements about Plaintiffs." Compl., ¶ 137. This blunderbuss allegation falls far short of the Second Circuit's admonition that, under Fed. R. Civ. P. 8, a defamation complaint must "afford defendant sufficient notice of the communications complained of to enable him to defend himself." Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (citing Liguori v. Alexander, 495 F. Supp. 641, 646 (S.D.N.Y. 1980)).

A defamation claim is sufficiently pled only "if there is 'an adequate identification of the purported communication, and an indication of who made the communication, when it was

---

[19]   See also Jimenez v. United Fed'n. of Teachers, 239 A.D.2d 265, 266, 657 N.Y.S.2d 672, 673 (1st Dep't 1997) (affirming dismissal of defamation claim where plaintiff "was required but failed to allege facts sufficient to show actual malice with convincing clarity"); Baumblatt v. Battalia, 134 A.D.2d 226, 229, 520 N.Y.S.2d 571, 575 (2d Dep't 1987) (dismissing defamation claim where statements were subject to qualified privilege and "bare, unsupported and conclusory allegations in the complaint that the defendants' statements . . . were made maliciously, are insufficient") (citation omitted).

made, and to whom it was communicated."  Meyer v. Zubak, No. 97 Civ. 1393 (LMM), 2000 WL 145754, at *2 (S.D.N.Y. Feb. 8, 2000) (quoting Broome v. Biondi, No. 96 Civ. 0805 (RLC), 1997 WL 83295, at *2 (S.D.N.Y. Feb. 10, 1997)); see also Wanamaker v. Columbian Rope Co., 713 F. Supp. 533, 545 (S.D.N.Y. 1989), aff'd 108 F.3d 462 (2d Cir. 1997).[20]  Paragraph 137 of the Complaint falls unacceptably short of this standard.  Other than the January 25 email, it fails to identify a single defamatory statement at issue, nor does it specify who made those statements, when they were made, or to whom they were made.

Such a defamation claim cannot stand.

---

[20]  In Wanamaker, 713 F. Supp. at 545, the court dismissed a defamation claim where:

> [Plaintiff's] claim consist[ed] solely of the vague, conclusory statement that defendants defamed him by speaking or writing or circulating malicious, untrue and damaging comments about his job performance.  Plaintiff does not specify who made the comments, does not specify when they were made, fails to allude to the context in which they are alleged to have been made, significantly does not indicate whether they were written or oral, and does not set forth in any manner whatsoever the words which he claims are actionable so as to give defendants notice of the statements at issue.

23

## CONCLUSION

For the foregoing reasons, Defendant Marubeni America Corporation respectfully requests that this Court grant its motion to dismiss the Amended Complaint in its entirety.

Dated:  New York, New York
       April 29, 2005

PILLSBURY WINTHROP SHAW PITTMAN LLP

BY: _____
       Kenneth W. Taber (KT 2570)
       Christine N. Kearns (CK 6579)
       1540 Broadway
       New York, NY  10036-4039
       (212) 858-1000

       Attorneys for Defendant Marubeni
       America Corporation